Approved: /s/ James McMahon
James McMahon
Assistant United States Attorney

**ORIGINAL**

Before:  HONORABLE LISA MARGARET SMITH
United States Magistrate Judge
Southern District of New York

- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

- v. -

BARBARA MEYZEN, a/k/a
  "Bobbie Meyzen",

                Defendant.

- - - - - - - - - - - - - - - - - X

**SEALED COMPLAINT** 19mag6741

Violations of
18 U.S.C. §§ 152(7),
1001, 1028A, 1029, 1341,
1343

COUNTY OF OFFENSE:
Westchester

SOUTHERN DISTRICT OF NEW YORK, ss.:

KEVIN GONYO, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

COUNT ONE
(Aggravated Identity Theft)

1. In or about December 2015, in the Southern District of New York and elsewhere, BARBARA MEYZEN, a/k/a "Bobbie Meyzen," the defendant, knowingly did transfer, possess, and use, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, the defendant  possessed, used, and transferred the personal identification information of another person in connection with the commission of wire fraud, as charged in Count Two of this Complaint.

(Title 18, United States Code, Sections 1028A and 2.)

COUNT TWO
(Wire Fraud)

2. From in or about August 2015 through in or about July 2016, in the Southern District of New York and elsewhere, BARBARA MEYZEN, a/k/a "Bobbie Meyzen," the defendant, did

willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire and radio communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit, the defendant submitted materially false financial information to lenders, factors and financiers in support of applications for extensions of credit.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT THREE
(Mail Fraud)

3. From in or about November 2015 to the present, in the Southern District of New York and elsewhere, BARBARA MEYZEN, a/k/a "Bobbie Meyzen," the defendant, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, for the purpose of executing such scheme and artifice and attempting to do so, knowingly placed in a post office and authorized depository for mail matter, and took and received therefrom, a matter and thing to be sent and delivered by the Postal Service, and knowingly caused to be delivered by mail according to the direction thereon, such matter and thing, in violation of Title 18, United States Code, Sections 1341 and 2, to wit, the defendant used the mail to further a scheme to defraud a mortgagee on property owned by a limited liability company of which she was a member by filing a false satisfaction of mortgage.

(Title 18, United States Code, Sections 1341 and 2.)

## COUNT FOUR
(Access Device Fraud)

4. From in or about June 2017 through in or about October 2017, in the Southern District of New York and elsewhere, BARBARA MEYZEN, a/k/a "Bobbie Meyzen," the defendant, did knowingly, willfully and with intent to defraud, effect transactions with an access device issued to another person to receive things of value with an aggregate value greater than $1,000 during a one year period, in violation of Title 18, United States Code, Section 1029(a)(5), to wit, the defendant

used a charge card issued to another person to purchase goods and services for the benefit of a corporation of which she was a shareholder and officer.

(Title 18, United States Code, Sections 1029(a)(5) and 2.)

## COUNT FIVE
(False Statements to FBI)

5. On or about May 1, 2019, in the Southern District of New York and elsewhere, BARBARA MEYZEN, a/k/a "Bobbie Meyzen," the defendant, knowingly and willfully made materially false, fictitious and fraudulent statements and representations in a matter within the jurisdiction of the executive branch of the Government of the United States, in violation of Title 18, United States Code, Section 1001(a)(2), to wit MEYZEN made the following false statements in substance to Special Agents of the FBI:

   a. she believed another individual, whom she identified by name ("John Doe"), filed a forged satisfaction of mortgage relating to a second mortgage on the Meyzen Family Realty property with the Clerk;

   b. she did not pay the fee for filing the forged satisfaction of mortgage relating to that second mortgage;

   c. she did not know anything about charges made to the American Express account of her friend ("Jane Doe") for restaurant supplies for La Cremaillere;

   d. she did not have conversations with Jane Doe about charges to Jane Doe's American Express account;

   e. she did not give Jane Doe checks, which bounced, to cover the charges;

   f. she did not know anything about submitting altered bank statements to lenders; and

   g. she did not send a fake email to a lender.

(Title 18, United States Code, Sections 1001(a)(2) and 2.)

## COUNT SIX
(False Statement to United States Trustee)

6. On or about June 11, 2019, in the Southern District of New York and elsewhere, BARBARA MEYZEN, a/k/a "Bobbie Meyzen," the defendant, knowingly and willfully made materially false, fictitious and fraudulent statements and representations to the United States Trustee in a matter within the jurisdiction of the executive branch of the Government of the United States, in violation of Title 18, United States Code, Sections 1001(a)(2) and 2, to wit, the defendant falsely told an Assistant United States Trustee under oath that she was unaware that property and liability insurance for Meyzen Family Realty and La Cremaillere had been canceled when she provided documents suggesting the policies were in effect to the United States Trustee on or about May 14, 2019.

(Title 18, United States Code, Sections 1001(a)(2) and 2.)

## COUNT SEVEN
(Concealment of Debtor's Property)

7. From in or about April 2019 to in or about June 2019, BARBARA MEYZEN, a/k/a "Bobbie Meyzen," the defendant, in her capacity as an agent and officer of La Cremaillere Restaurant Corp., did knowingly, willfully and with the intent to defeat the provisions of Title 11 of the United States Code, transfer and conceal property of La Cremaillere Restaurant Corp., a debtor in possession, in violation of Title 18, United States Code, Sections 152(7) and 2, to wit, the defendant caused transfers of funds belonging to La Cremaillere Restaurant Corp. as debtor in possession to be diverted to bank accounts held by her and by an entity under her control and used a portion of those funds to pay La Cremaillere's expenses.

(Title 18, United States Code, Sections 157(7) and 2.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

### Background

8. I am a Special Agent with the FBI and have been so employed for approximately three years. I am currently assigned to the FBI's Westchester Resident Agency, where I investigate violations of federal criminal law relating to a wide variety of crimes, including fraud. Before I became a Special Agent with

4

the FBI, I was an accounting and finance professional for about seven years.

9. I have been personally involved in the investigation of this matter. I base this affidavit on my training and experience, my personal knowledge, my conversations with others, and my examination of various reports and records.

10. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of this investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

11. I have learned the following from my interviews of witnesses and of the defendant, my review of records and my conversations with other investigators:

   a. La Cremaillere Restaurant Corp. ("La Cremaillere") owns and operates a restaurant in Banksville, New York. On or about April 17, 2019, La Cremaillere filed a bankruptcy petition under Chapter 11 of the U.S. Bankruptcy Code in the U.S. Bankruptcy Court for the Southern District of New York in White Plains. Since that time, La Cremaillere has operated the restaurant as a debtor in possession.

   b. Since 1993, BARBARA MEYZEN, a/k/a "Bobbie Meyzen," the defendant, has been a Vice President of La Cremaillere and has owned fifty percent of its shares. On or about June 10, 2019, MEYZEN testified under oath in a proceeding in La Cremaillere's bankruptcy case that she handled La Cremaillere's bookkeeping and paid La Cremaillere's bills and payroll.

   c. The real property on which La Cremaillere operates its restaurant has been owned by Meyzen Family Realty Associates, LLC ("Meyzen Family Realty") at all times relevant to this Complaint. On or about September 13, 2018, Meyzen Family Realty filed a petition in bankruptcy under Chapter 11 of the U.S. Bankruptcy Code in the U.S. Bankruptcy Court for the Southern District of New York in White Plains. Since that time, Meyzen Family Realty has operated as a debtor in possession. MEYZEN is a Managing Member of Meyzen Family Realty. On or about November 7, 2018, MEYZEN testified under oath in a proceeding in Meyzen Family Realty's bankruptcy case that she

was familiar with the finances of Meyzen Family Realty.

### Aggravated Identity Theft/Defrauding Lenders

12. On or about October 20, 2015, BARBARA MEYZEN, a/k/a "Bobbie Meyzen," the defendant, and her partner in La Cremaillere applied for a business loan of at least $350,000 on behalf of La Cremaillere from a lender in Manhattan (the "Lender"). I have reviewed the Lender's file relating to this application.

13. The Lender's file shows that on or about December 1 and December 2, 2015, BARBARA MEYZEN, a/k/a "Bobbie Meyzen," the defendant, sent to the Lender by fax copies of bank statements for La Cremaillere's checking account for May 2015 through August 2015 in support of La Cremaillere's loan application. My comparison of these account statements with the corresponding account statements I received directly from La Cremaillere's bank in Connecticut (the "Bank") shows that there are significant differences between the two sets of statements. On the statements provided by MEYZEN to the Lender, negative balances for the beginning and end of months, as well as negative daily balances, were converted to positive balances; indications of checks drawn by MEYZEN but rejected due to insufficient funds were removed; and service charges were lowered or eliminated. For example, the statement for August 2015 provided by the Bank showed a beginning balance of negative $32,865.57, while the corresponding statement provided by MEYZEN showed a positive beginning balance of $27,766.29. The ending balance for that month on the statements provided by the Bank was negative $5,268.13, while that number was positive on the statements provided by MEYZEN. The August statement provided by the Bank showed service charges totaling $2,385.60 resulting in part from approximately 60 checks and payments returned for insufficient funds, while the corresponding statement provided by MEYZEN showed a total of $8.00 in service charges resulting in part from approximately 6 checks returned for insufficient funds.

14. On or about December 7, 2015, La Cremaillere's loan broker sent BARBARA MEYZEN, a/k/a "Bobbie Meyzen," the defendant, an email in which he said in part:

> I spoke with [the Lender] and they are trying to get the same answers about the bank statements that we discussed a few weeks ago, hopefully you recall I mentioned that ultimately you may need to give access

>  to the accounts. In this case [the Lender] just needs your bank to explain and help cover the bases. You also may recall two of my lenders had reviewed your file for 150k-300k loan and each expressed confusion over how the bank statements are presented and how the balances are calculated. Please let me know what I can do to have you get with [the "Lender Representative"] at [telephone number] to get this completed. It's important for you to know that we are a day away from docs and funding once this is resolved . . . .

15. On or about December 10, 2015, the Lender Representative sent an Assistant Vice President (the "Banker") of the Bank an email in which she requested La Cremaillere's bank statements for the months of June through November 2015. The Banker responded that she had received permission to give [the Lender] the statements from "Bobbie" and sent the Lender Representative the requested statements in a series of emails.

16. On or about December 17, 2015, the Banker sent an email to the Lender Representative, with a copy to BARBARA MEYZEN, a/k/a "Bobbie Meyzen," the defendant, in which she stated in part:

>  Bobbie has given me permission to explain why a balance does not agree with the availability balance.
>
>  The system at the Bank is "live" meaning when a deposit is made the balance will change and also the available balance. The available balance could be lower due to the checks that were deposited have to clear [sic]. . . .
>
>  When a check is cashed that is on this Bank, this will also change the balance. Cashing a non-on-us check for a client there will be a one day hold on their account making the available balance lower than the balance.
>
>  The balance and available balance can change thru out [sic] the day.

The Lender Representative responded by noting "[t]he statements given to us by you show nsf charges, but the ones given by Bobbie, which she states were given to her by the bank, do not have the nsf charges."

7

17. On or about December 21, 2015, the Lender sent a letter addressed to La Cremaillere in which it said in substance and in part that the Restaurant's application for credit had been rejected "[b]ased on suspicion of fraud."

18. On or about December 22, 2015, the Lender Representative in New York received an email that purported to be from the Banker. The "From" line in the email contained the Banker's name, immediately followed by "<[Bank]@gmail.com>". The email contained a signature block containing the same text, font and warning about confidential material as the signature block in the December 17 email described above that the Banker sent to BARBARA MEYZEN, a/k/a "Bobbie Meyzen," the defendant. It also had the same subject line, "RE: Meyzen Family" as the December 17 email. This December 22 email stated in its entirety:

> The statements did indeed come from our bank and we acknowledge there is an error in our system and that is why the statements do not match.
>
> Hope this is helpful.

I know from my training and experience that emails sent by Gmail involve wire communications outside of New York State.

19. The Banker has told me she did not send the email described above. According to the Banker, while account statements provided by the Bank in hard copy have a different format and appearance than the Bank's account bank statements available online, both kinds of account statements contain the same data.

20. My investigation, including my review of files of potential lenders, factors or financiers from which La Cremaillere has sought credit, has revealed that from in or about October 2015 to in or about March 2018, BARBARA MEYZEN, a/k/a "Bobbie Meyzen," the defendant, sent altered account statements for La Cremaillere's checking accounts at the Bank or at other banks to at least eight other potential lenders, factors or financiers in an effort to obtain credit. These account statements were altered to change negative balances to positive balances, to remove references to checks drawn on the account that were returned for insufficient funds, or to lower service fees that had been charged to the account. In many instances, MEYZEN used interstate wires to send the altered

account statements, other documents or communications relating to her applications for credit by facsimile or by email.

21. I interviewed BARBARA MEYZEN, a/k/a "Bobbie Meyzen," the defendant, in Banksville, New York on or about May 1, 2019. I advised her that making false statements to federal agents during the course of a federal investigation was a federal crime that could subject her to imprisonment. During the interview, MEYZEN said in substance and in part:

    a. she did not know anything about submitting altered bank statements to lenders; and

    b. she did not send a fake email to the Lender.

22. At the conclusion of my interview of BARBARA MEYZEN, a/k/a "Bobbie Meyzen," the defendant, I told MEYZEN that she could change any statement she made during the interview at that time without penalty. MEYZEN declined to make any changes to the statements she made during the interview.

<u>Defrauding Second Mortgagee</u>

23. From in or about April 2014 to the present, L&J Smith Investments, LP ("L&J Smith") held a second mortgage on the Banksville property owned by Meyzen Family Realty that secured a $155,000 loan. BARBARA MEYZEN, a/k/a "Bobbie Meyzen," the defendant, signed the mortgage. The records of the Westchester County Clerk (the "Clerk") indicate that "Bobbie Meyzen" submitted via the Internet the mortgage for filing in the public property records maintained by the Clerk. The Clerk's records also show that a recorded copy of the mortgage was to be mailed to the defendant at Meyzen Family Realty. The submitter's telephone number in the Clerk's records is that of La Cremaillere. The submitter's email address in the Clerk's records incorporates La Cremaillere's name and is the email address I have seen MEYZEN use.

24. On or about November 19, 2015, BARBARA MEYZEN, a/k/a "Bobbie Meyzen," the defendant, filed with the Clerk a Satisfaction of Mortgage stating in substance that the $155,000 loan had been paid and that L&J Smith's mortgage on the Meyzen Family Realty property should be discharged. The Satisfaction of Mortgage was purportedly signed by L&J Smith's managing partner (the "Managing Partner") on behalf of L&J Smith. The Clerk's records show that the Satisfaction of Mortgage was submitted over the Internet to the Clerk by "Bobbie Meyzen" on

9

behalf of La Cremaillere. Those records also show that a recorded copy of the Satisfaction of Mortgage was to be mailed to the defendant at Meyzen Family Realty at a Post Office box maintained by La Cremaillere. The submitter's telephone number in the Clerk's records is that of La Cremaillere and the submitter's email address is MEYZEN'S.

25. On or about the same date BARBARA MEYZEN, a/k/a "Bobbie Meyzen," the defendant, filed the Satisfaction of Mortgage with the Clerk, the defendant also submitted a check to the Clerk that was drawn on La Cremaillere's checking account at the Bank for the $50.50 filing fee. The check is signed with MEYZEN's distinctive signature. I examined the records of La Cremaillere's checking account at the Bank and saw that this check was processed through the account.

26. The Clerk's records show that the Satisfaction of Mortgage was initially rejected for filing for formatting reasons but was later accepted and filed in October 2017 after it was revised. Thereafter, it appeared from the Clerk's public property records that the Meyzen Family Realty property had only one mortgage on it.

27. The Clerk's records show that a copy of the filed Satisfaction of Mortgage was sent by U.S. Mail to BARBARA MEYZEN, a/k/a "Bobbie Meyzen," the defendant, at La Cremaillere's Post Office box in Bedford, New York.

28. The Lender's files show that on or about November 19, 2015, BARBARA MEYZEN, a/k/a "Bobbie Meyzen," the defendant, sent a copy of the Satisfaction of Mortgage to the Lender. La Cremaillere had an application for credit pending with the Lender at that time. On or about December 2, 2015, MEYZEN sent the purported release again to the Lender, accompanied this time by a cover sheet suggesting that the release had been filed with the Westchester County Clerk.

29. On or about December 2, 2015, BARBARA MEYZEN, a/k/a "Bobbie Meyzen," the defendant, was interviewed by telephone by a representative of the Lender. I have listened to a recording of that conversation. MEYZEN offered no response when the representative acknowledged that MEYZEN had provided the Lender with the mortgage release.

30. My investigation has revealed that the Managing Partner's signature on the Satisfaction of Mortgage is a forgery. Documents filed in a lawsuit brought by L&J in 2018

against BARBARA MEYZEN, a/k/a "Bobbie Meyzen," the defendant and Meyzen Family Realty in the Supreme Court of Westchester County, which documents I have reviewed, identify the Managing Partner as MEYZEN'S relative by marriage. The court file contains an affidavit from the Managing Partner in which she alleges that she has never released the mortgage and that the underlying $155,000 loan has not been repaid. The court file also contains an affidavit from the Texas notary that supposedly notarized the Managing Partner's signature in which she states that she did not notarize the Satisfaction of Mortgage. The notary stated further that the notary seal on the Satisfaction of Mortgage is not her seal and that the expiration date of her commission appearing on that document has never been the expiration date of her commission.

   31. When I interviewed BARBARA MEYZEN, a/k/a "Bobbie Meyzen," the defendant, on or about May 1, 2019, she said in substance and in part that the L&J Smith mortgage is not satisfied and that:

   a. She did not pay the fee to file the Satisfaction of Mortgage with the Clerk;

   b. She did not file the Satisfaction of Mortgage with the Clerk; and

   c. She believes that John Doe, a loan broker with whom she had worked in the past and whom she identified by name, filed the Satisfaction of Mortgage with the Clerk.

   32. I have identified an account manager with a financier from which La Cremaillere obtained funding in or about September 2016 with a name substantially similar to John Doe's name.

<u>Unauthorized Use of Access Device</u>

   33. Jane Doe, a resident of Stamford, Connecticut, has told me that as of the summer of 2017, she was a regular customer at the La Cremaillere restaurant and was friends with BARBARA MEYZEN, a/k/a "Bobbie Meyzen," the defendant. Jane Doe has told me she had provided MEYZEN with her American Express card number so that La Cremaillere could charge her restaurant bills automatically to her account.

   34. I have reviewed records relating to Jane Doe's American Express account. They show that on or about June 30,

2017, a food distributor in New Bedford, MA charged $1,385.35 to Jane Doe's American Express card. Jane Doe's account statement noted that the charge was for "non-durable goods" for La Cremaillere. The corresponding invoice from the food distributor showed that the "non-durable goods" consisted primarily of fruits, vegetables and cheese that were delivered to the La Cremaillere Restaurant. This invoice, as well as other invoices relating to deliveries from the food distributor to La Cremaillere dating back to at least early May 2017, were marked "DO NOT DROP *EVER* WITHOUT PAYMENT" and "CASH ONLY NO DROP ALLOWED."

35. The New Bedford food distributor made approximately 17 additional charges to Jane Doe's charge card from in or about July 2017 through in or about October. For each charge, I have obtained a corresponding invoice from the food distributor. Each of those invoices shows that the purchased goods were delivered to La Cremaillere. The total amount charged to Jane Doe's charge card by the New Bedford food distributor exceeds $23,000.

36. Jane Doe's American Express statements also show that, during the same time period, other food distributors and businesses made unauthorized charges to Jane Doe's account. Jane Doe has identified unauthorized charges to her charge card between July and October 2017 that, including the unauthorized charges from the New Bedford distributor, had a total amount of approximately $80,000.

37. Jane Doe also said to me in substance and in part that she spoke with BARBARA MEYZEN, a/k/a "Bobbie Meyzen," the defendant, about the unauthorized charges. MEYZEN told Jane Doe that the charges were a mistake and that she would call American Express to resolve the problem. MEYZEN repeatedly told Jane Doe either that the matter was resolved or that American Express was still reviewing the matter as late as in or about April 2018.

38. In or about October and November 2017, BARBARA MEYZEN, a/k/a "Bobbie Meyzen," the defendant, gave Jane Doe checks drawn on La Cremaillere's checking account to cover approximately $32,000 of the unauthorized charges. These checks were returned due to insufficient funds. Jane Doe provided me with copies of the returned checks and other bank documents showing that the checks had been returned for insufficient funds. I have also examined the records for the checking account from which these checks were drawn. That account did not have sufficient balances to cover any of the checks when

12

they were drawn.

39. When I interviewed BARBARA MEYZEN, a/k/a "Bobbie Meyzen," the defendant, on or about May 1, 2019, she stated in substance and in part:

a) she did not know anything about charges made to Jane Doe's American Express account for restaurant supplies for La Cremaillere;

b) she did not have conversations with Jane Doe about charges to Jane Doe's American Express account;

c) she did not give Jane Doe checks, which bounced, to cover the charges; and

d) she would only charge Jane Doe's American Express card when Jane Doe was at the restaurant.

False Testimony to United States Trustee

40. On or about November 7, 2018, BARBARA MEYZEN, a/k/a "Bobbie Meyzen," the defendant, was deposed under oath in the federal courthouse in White Plains by an Assistant United States Trustee in connection with the Meyzen Family Realty bankruptcy. During her testimony, counsel for Meyzen Family Realty disclosed that there was no property insurance in effect on Meyzen Family Realty's real property. The Assistant United States Trustee responded in part:

> This is obviously a big issue for my office and for creditors as well. If insurance isn't in place promptly, we'll likely move to dismiss your case.

MEYZEN responded "right," and said that she had spoken with her insurance broker that morning, intended to meet with him later that day and intended to get property insurance in place that day. The Assistant United States Trustee responded in part "It's a big issue, so I see that you understand that." MEYZEN responded "I do understand that."

41. The Bankruptcy Court held a hearing in the La Cremaillere bankruptcy on or about May 15, 2019. Prior to that hearing, an Assistant United States Trustee and counsel for Meyzen Family Realty's largest creditor asked counsel for Meyzen Family Realty and La Cremaillere whether either debtor had obtained insurance. On or about May 14, 2019, a paralegal from

Meyzen Family Realty's counsel' office sent an email to the United States Trustee's office in which she stated in substance and in part that "The Debtor is suppose [sic] to be supplying those . . . this morning before the conference." In a later email on or about that day, the paralegal told the United States Trustee's office with respect to its request for La Cremaillere's bank statements that "Shes [sic] going to try to print Feb- April when she gets here then I can forward to you." In that same email, the paralegal attached documents indicating that La Cremaillere and Meyzen Family Realty had property insurance and liability insurance in effect as of November 30, 2018.

42. On or about May 15, 2019, counsel for Meyzen Family Realty's largest creditor spoke with Meyzen Family Realty's and La Cremaillere's insurance broker and learned that both the liability insurance and the property insurance had been cancelled in or about February 2019 due to nonpayment.

43. On or about June 11, 2019, BARBARA MEYZEN, a/k/a "Bobbie Meyzen," the defendant, was deposed under oath by an Assistant United States Trustee in connection with the La Cremaillere bankruptcy. When asked about the cancellation of the insurance policies, MEYZEN testified that "I did not realize that the policy had been canceled" at the time she gave the U.S. Trustee the insurance documents on May 14. MEYZEN testified further that she did not receive any notice of the cancellation of the policies.

44. I have spoken with a representative for Meyzen Family Realty's and La Cremaillere's insurance broker, who told me in substance and in part that employees of the insurance broker had communicated several times with BARBARA MEYZEN, a/k/a "Bobbie Meyzen," the defendant, about the cancellation of the policies prior to their cancellation for nonpayment in or about February 2019.

Concealment of Debtor's Financial Activities

45. On or about April 19, 2019, two days after La Cremaillere filed its bankruptcy petition, BARBARA MEYZEN, a/k/a "Bobbie Meyzen," the defendant, opened a bank account in her name at a bank in Ridgefield, Connecticut ("Bank #2"). I have examined documents from Bank #2 relating to this account. On or about April 23, 2019 and on April 25, 2019, this account received several credits from a merchant credit card processor in the name of La Cremaillere that totaled more than $40,000.

MEYZEN used a portion of that money to make payments to a food distributor and to an in-home nursing service. The account was closed on or about May 1, 2019.

46. During her November 7, 2018 testimony, BARBARA MEYZEN, a/k/a "Bobbie Meyzen," the defendant, described Honey Bee Farm as a "small apiary" at her home that supplied honey to the restaurant at no expense. MEYZEN testified that Honey Bee Farm had no bank account or expenses.

47. I have examined documents showing that on or about May 7, 2019, BARBARA MEYZEN, a/k/a "Bobbie Meyzen," the defendant, and another individual opened a business checking account for Honey Bee Farm LLC at a bank in White Plains, New York. The account statements show numerous deposits from credit card processors in amounts ranging from a few hundred dollars to more than ten thousand dollars. Included among those deposits are two wire transfers of $10,000 each on or about June 7 and June 24, 2019 respectively. I have spoken with a representative with the credit card processor who sent those two wire transfers. This representative told me in substance and in part that: a) the wire transfers related to La Cremaillere's restaurant; b) the two $10,000 charges represented advances on La Cremaillere's future credit card revenue; and c) MEYZEN had told the processor that she had to change the name on the restaurant's account at the processor to Honey Bee Farm.

48. The account statements for the Honey Bee account also show numerous checks written by MEYZEN to, and numerous transfers to, food distributors, two wine wholesalers, a commercial trash service, a tableware and china company, and an employee of La Cremaillere, among others. The account statements also show a $6,874.35 wire transfer to bankruptcy counsel for Meyzen Family Realty and La Cremaillere. The corresponding wire transfer request form for this wire transfer identifies the purpose of the transfer as "mortgage payment." I

know from my investigation that Meyzen Family Realty has been making monthly payments to its first mortgagee through its bankruptcy counsel.

WHEREFORE, deponent respectfully requests that a warrant be issued for the arrest of BARBARA MEYZEN, a/k/a "Bobbie Meyzen," the defendant, and that she be arrested and imprisoned or bailed, as the case may be.

_____
SPECIAL AGENT KEVIN GONYO
Federal Bureau of Investigation

Sworn to before me this
22nd day of July, 2019

_____
HONORABLE LISA MARGARET SMITH
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK